UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NESIBE OYE SOYSAL,

Plaintiff,

v.

COUNTY OF SANTA CRUZ, et al.,

Defendants.

Case No.  23-cv-03610-PCP

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 66

Pro se plaintiff Dr. Nesibe Oya Soysal alleges that defendants the County of Santa Cruz, its personnel department, and various County officials discriminated and retaliated against her for requesting workplace accommodations. Dr. Soysal alleges that her supervisor Dr. Alexander W. Threlfall, Chief of Psychiatry at Santa Cruz's Health Services Agency from October 2020 to September 2022, discriminated against her based on her paraplegia and her age, and that the County and its officials failed to properly respond to her requests for accommodations of her disability and complaints about discriminatory treatment. Defendants move to dismiss for failure to state a claim, arguing that Dr. Soysal has failed to allege that defendants committed the requisite "adverse action" and that the Americans with Disabilities Act does not recognize a cause of action for harassment. For the reasons stated below, defendants' motion to dismiss is granted in part with leave to amend and denied in part.

**BACKGROUND**

Dr. Soysal is a psychiatrist who has been employed by the County since April 2015.[1] Dr. Soysal alleges that she has paraplegia and a neurogenic bladder, which means she "is required to

---

[1] The Court assumes the truth of the allegations in the amended complaint for the purposes of defendants' Rule 12(b)(6) motion.

United States District Court
Northern District of California

empty her bladder with a catheter every four hours." Dr. Soysal needed a fifteen-minute break every four hours so that she could catheterize. Dr. Soysal alleges, however, that "the County has displayed a cavalier attitude to this requirement, and the guaranteed breaks were not placed in her schedule consistently and regularly." Dr. Soysal alleges that the County failed to schedule her time properly when she was a psychiatrist for the Santa Cruz jail system, resulting in "busy Jail correctional officers[ who] overlooked or ignored catheterization times and without interruption[] accompanied the inmates individually and under high security[] to the Telehealth room." As a result, "there was scarcely 5 minutes between inmate patients and no time for [Dr. Soysal] to catheterize." Over time, Dr. Soysal says that her "catheterization times disappeared" and having "to sit in a wet diaper multiple hours while working as a remote psychiatrist at Santa Cruz County Jail" "led to the development of a serious pressure wound" in Summer 2020, which required hospitalization in October 2021. Dr. Soysal says she alerted a supervisor to the scheduling pressure in September 2020 without response.

Dr. Soysal alleges that when Dr. Threlfall became her new supervisor as Chief of Psychiatry in October 2020, "he immediately began to exert extreme pressure on her." In a November 8, 2021, meeting, Dr. Soysal says she met with Dr. Threlfall who "questioned [her] capacity to work as a psychiatrist," asked if she needed accommodations, and "recommended that [she] should consider retirement, or disability retirement or long-term disability because [she] was old and disabled, and had a medical condition." Dr. Threlfall also allegedly accused Dr. Soysal of sleeping during work and meetings and of "writing notes outside of work hours." Dr. Soysal "concedes [that on one occasion] she had closed her eyes briefly, explaining she had been working late the night before trying to get more patient notes done." On another, Dr. Soysal says that she "had briefly fallen asleep in her office … while waiting for her ride home" after her workday. On that other occasion, Dr. Soysal says that Dr. Threlfall made a "hostile phone call that she should not return to work before visiting a doctor and medical clearance, rejecting that she be paid for the Friday of mandatory medical absence, and only permitting her to use County email for submitting a medical clearance form." Later, Dr. Soysal's access to work communications to only the hours when she was at work. FAC at 15.

2

In an October 31, 2021, evaluation, Dr. Threlfall allegedly "admonish[ed]" Dr. Soysal for working outside of work hours. At the same time, Dr. Soysal says that defendants "refused to allow [Dr. Soysal] the time" to "catch up with her delinquent notes." Throughout 2021 and 2022, Dr. Soysal alleges that defendants did not accommodate her need for more administrative time to complete work tasks. Dr. Soysal also alleges that defendants refused "to let her work remotely during [the] COVID" pandemic despite her need to "reduce vehicle transfers and hence avoid wound aggravation." Finally, Dr. Soysal alleges that defendants retaliated against her by "doctoring" her personnel file to include a 2016 reprimand that Dr. Soysal had successfully challenged.

After Dr. Soysal filed a charge with the Equal Employment Opportunity Commission, she was issued a notice of right to sue. Dr. Soysal then filed the instant suit. She alleges "discrimination and harassment experienced at the hands of Dr. Threlfall, County Personnel and by extension Ajita Patel." Dr. Soysal alleges that defendants engaged in disability discrimination, age discrimination, retaliation, hostile workplace harassment, and a failure to accommodate, in violation of the Age Discrimination in Employment Act (ADEA), the Rehabilitation Act, the Americans with Disabilities Act (ADA), and Title VII of the Civil Rights Act of 1964.[2] After filing her complaint, Dr. Soysal filed an amended complaint and noted that she was hospitalized from February to July 2024 for treatment of the wound allegedly caused by the County's failure to provide sufficient accommodations of her disability.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint does not, the defendant may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable

---

[2] Although Dr. Soysal alleges violations of Title VII in counts 3 through 5 of the amended complaint, she does not allege that any of defendants' conduct was based on a category protected by that statute, such as race, sex, or national origin. For that reason, the Court grants defendants' motion to dismiss with respect to Dr. Soysal's Title VII claims.

United States District Court
Northern District of California

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Where a plaintiff proceeds pro se, the Court "must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

## DISCUSSION

Defendants move to dismiss Dr. Soysal's claims for failure to plead any requisite adverse action and because the Ninth Circuit purportedly does not recognize a harassment claim under the ADA. Dr. Soysal argues that the County "failed to accommodate her disability, ignored physicians' written accommodation requests, subjected her to discriminatory remarks about her age and disability, issued an unfair performance review, restricted her access to workplace communications, deprived her of working remotely contrary to other employees in the state stat[e]."

## I.     Disability and Age Discrimination

A plaintiff suing for disability discrimination in violation of the ADA or Rehabilitation Act, which are "interpreted coextensively" in this context, must show that "(1) [s]he is a qualified individual with a disability; (2) [s]he was either excluded from participation in or denied the

benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [her] disability." *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021) (quotation marks omitted) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)). Under the ADEA, an employer may not discriminate "because of [an] individual's age." 29 U.S.C. § 623(a)(1). A plaintiff suing for age discrimination under the ADEA must establish that age was the "but-for" cause of the employer's adverse action. *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012). Dr. Soysal is at least 40 years old, as required by the ADEA. 29 U.S.C. § 631(a).

In moving to dismiss Dr. Soysal's claims of disability- and age-discrimination, defendants argue that Dr. Soysal has not shown that she suffered "any adverse action" and that she has not made any "attempt to causally tie those events to any discriminatory intent." Neither argument succeeds.

First, Dr. Soysal has pleaded adverse actions taken against her including that she was limited to four-hour schedule blocks without adequate time to catheterize and do her notes and that defendants ignored her requests for a schedule that was both necessary for her to meet her job responsibilities and consistent with the schedule provided to other doctors. She alleges that, for other physicians in her position, "[a]n 8-hour work day includes 6 hours of patient care (equals to 12 patients)" and "2 hours of administrative time" during which psychiatrists could coordinate care with patients, their families, and other healthcare professionals. Dr. Soysal alleges that she was denied a comparable schedule after requesting an accommodation of her need for time to catheterize. Specifically, Dr. Soysal alleges that on November 4, 2020, her physician, Dr. Muller, requested that "Dr. Soysal 'work remotely at home limited to 4 hours per day.'" Dr. Soysal alleges that, instead of providing her a schedule with 3 hours of patient care and 1 hour of administrative time comparable to the schedule provided to other physicians, defendants assigned her for a full four-hour schedule with no additional time within those four hours to write notes or perform other tasks. Dr. Threlfall also insisted that Dr. Soysal's "physician ha[d] made it absolutely clear that [she] cannot be working outside of the agreed upon time." Dr. Soysal alleges that she was given

5

"no extra time during work hours to catheterize" and that her physician "made no such recommendation on 'agreed upon time.'" Dr. Soysal also alleges that her physician later clarified that the recommended four-hour limitation was for "patient contact" so as to "limit her sitting in an unfavorable seating position, not to preclude her from doing any additional work," and offered to talk with her supervisors about his recommendation. Dr. Threlfall "chose to ignore Dr. Mueller's offer" to discuss Dr. Soysal's limitations.

The result for Dr. Soysal was less time to work, less time to catheterize, and less time to complete administrative tasks. Dr. Soysal "was in the unfortunate position of being compelled to use her administrative time for her necessary twice daily catheterization, each lasting approximately 20 minutes." Dr. Soysal says that the County failed to respond to her requests for scheduling modifications so that she would have time to catheterize. In a September 28, 2020, email to one of her supervisors, Dr. Soysal complained that "my schedule no longer takes into account my need to catetherize, … le[ading] to me suffering from increasingly frequent urinary tract infection and from pressure ulcers." In that email, Dr. Soysal requested that "greater attention is paid during scheduling to … my med[i]cal need to catheterize every four hours," which her supervisor at the time, Dr. Nair, did not reply to. Dr. Soysal's complaint alleges that her supervisors at the County's "most egregious failure … [is] the multiple ignored letters and doctor notes" requesting accommodations. Despite even the eventual involvement of Dr. Soysal's physician, Dr. Muller, who requested "extra time during work hours" from defendants so that Dr. Soysal could catheterize, defendants did not provide "extra time during work hours." Thus, Dr. Soysal effectively had less time for her daily administrative tasks or risked being unable to catheterize.

The restrictions defendants put on Dr. Soysal's work were not limited to declining to give her sufficient time to catheterize but also involved restricting her access to work resources outside of her designated work time, hindering in particular her ability to complete notes about patient interactions, despite other doctors customarily completing patient notes outside of work hours.

In total, the County ignored Dr. Soysal and her physician's repeated explanations and requests for accommodations and instead imposed restrictions on her work that were inconsistent

with those imposed upon other physicians and not medically necessary. Dr. Soysal's physician indicated that the County's refusal to adjust its misinterpretation of his restrictions was harming Dr. Soysal by limiting her ability to catheterize and contributing to the development of pressure wounds. These facts are sufficient to plausibly allege an adverse action.

Second, Dr. Soysal has plausibly pleaded that her age or disability were but-for causes of the adverse actions. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105–06 (9th Cir. 2019) (requiring showing of but-for causation). Her supervisors' disparaging or suggestive statements about Dr. Soysal's disability and age make plausible her allegations of discrimination, especially in the context of the harsh and unnecessary restrictions on her ability to complete work tasks that were imposed on her. Dr. Soysal alleges that Dr. Threlfall "questioned her capacity to work as a psychiatrist given her medical condition and Age." She also alleges that county personnel officer Leslie Scanagatta referred to Dr. Muller's medical note asking for accommodations when justifying "[Dr. Soysal's] unfair performance evaluation, her unwarranted and discriminatory work restrictions, and that she was being treated worse than her colleagues." Dr. Threlfall allegedly suggested that Dr. Soysal may be unable to do her work because of her age, saying that she should retire or seek disability benefits because she was old and disabled, and because of her health, justifying limiting her to four-hour schedule "for her … health." These allegations plausibly suggest that Dr. Soysal was discriminated against because of her disability and age. And while an offer of disability retirement may not necessarily indicate age-related animus, *see* 29 U.S.C. § 623(f)(2)(B), the other factual events Dr. Soysal alleges are sufficient at this stage of proceedings to plead a discriminatory motive.

Accordingly, Dr. Soysal has adequately pleaded claims for disability and age discrimination.

## II.    Retaliation

To establish retaliation under the ADA and ADEA, a plaintiff must show that "(1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (ADA); *see also Poland v. Chertoff*, 494 F.3d 1174, 1179–80 (9th Cir. 2007) (ADEA). While Dr.

Soysal's allegations might suggest unfair treatment, she does not plead facts plausibly establishing that the treatment was done *because* she had asked for accommodations for her medical conditions, and she has not pleaded that she engaged in any ADEA-protected activity. Treating others "like a non-person" can be harsh and indicative of discrimination, but a retaliation claim must connect that adverse treatment with a retaliatory motive. In the absence of facts plausibly suggesting that defendants' conduct occurred because she had requested accommodations or complained of age- or disability-discrimination, Dr. Soysal fails to plead that defendants retaliated against her because of her protected activity.

### III.    Hostile Work Environment

Contrary to defendants' assertion, "a disability-based harassment claim is available under the ADA and the Rehabilitation Act." *Mattioda v. Nelson*, 98 F.4th 1164, 1173 (9th Cir. 2024). To adequately plead a hostile-work-environment claim, a plaintiff "must allege that [she] was subjected to harassment because of [her] disability, and that the harassing 'conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment.'" *Id.* at 1174 (quoting *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003)).

Here, Dr. Soysal alleges a "series of harassing" actions connected to her disability. *Id.* at 1175. Dr. Soysal alleges that the County prohibited her from doing supplementary administrative work outside the four hours she was scheduled to work in the mornings even though that restriction was medically unnecessary. Dr. Soysal also alleges that the County "refus[ed] to respond (3x) to repeated requests" from her doctor to "eas[e] restrictions and clarification of [the] County's reluctance to accommodate" her. She also alleges various forms of unkind treatment, such as "[i]gnoring her presence at … meetings" and purportedly false and "[f]requent accusations of sleeping during work and meetings." Considered separately and in isolation, each of the alleged events might not "alter the conditions of [her] employment and create an abusive work environment." *Id.* at 1174. But in combination, Dr. Soysal's amended complaint has plausibly alleged a meaningful alteration in her employment conditions.

## V.     Failure to Accommodate

Under 42 U.S.C. § 12112(b), an employer violates the ADA by failing to accommodate an employee "if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). When an employee notifies an employer that she needs an accommodation, the employer must "engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Id.*

Dr. Soysal alleges that defendants failed to comply with their duty to provide reasonable accommodations under the ADA because they "[d]isregard[ed] and ignore[ed] … the letters and accommodation forms sent by her physician" and denied her requests to work remotely during COVID. Dr. Soysal alleges that the County "refus[ed] to respond (3x) to repeated requests" from her doctor to "eas[e] restrictions and clarification of [the] County's reluctance to accommodate" her. Dr. Soysal also argues that the County failed to engage in the required interactive process by giving her extra time to insert a catheter into her bladder, which requires fifteen to twenty minutes. The County "insist[ed] that [Dr. Soysal's] administrative time be used for her bathroom breaks despite her physician having recommended 'extra time' be added in order to prevent urinary tract infections and incontinence." Dr. Soysal alleges that the schedule the County provided her made it impractical to catheterize without her work suffering. Finally, the County also prohibited Dr. Soysal from accessing work systems outside of her scheduled four hours, "creating and enforcing a double standard in the treatment of psychiatric employees" and causing her to fall further behind on her work.

Defendants argue that Dr. Threlfall "did in fact engage in the interactive process to accommodate Dr. Soysal's noted work restrictions, though perhaps not to the level Dr. Soysal expected." But, as discussed above, the County allegedly failed to respond to Dr. Soysal's requests for scheduling modifications to allow her to catheterize. From 2020 to 2022, Dr. Soysal and her physician repeatedly complained about her work schedule and requested adequate time to

catheterize. In her September 28, 2020, email Dr. Soysal requested "greater attention is paid during scheduling to … my med[i]cal need to catheterize every four hours," which her supervisor, Dr. Nair, did not reply to. Dr. Soysal alleges that she was eventually hospitalized twice in 2021 because of a pressure wound owing to her inability to catheterize while working.

In response, Dr. Threlfall primarily asked her if she would like to retire. She had a meeting Dr. Threlfall on November 8, 2021, where he asked her "if [she] needed further accommodations so [she] could work at the same capacity as [her] colleagues do." But Dr. Soysal alleges Dr. Threlfall and other defendants continued to ignore her requests in the following year. Defendants also allegedly misinterpreted Dr. Soysal's physician's note, which "recommended Dr. Soysal 'work remotely at home limited to 4 hours per day.'" Instead of providing Dr. Soysal additional time *within* her scheduled hours to catheterize, defendants continued to schedule Dr. Soysal into a full four-hour schedule with no additional time to write notes or do other administrative tasks. Dr. Threlfall insisted that Dr. Soysal's "physician has made it absolutely clear that you cannot be working outside of the agreed upon time," even though that physician clarified that his recommended four-hour limitation was specifically for "patient contact" so as to "limit [Dr. Soysal's] sitting in an unfavorable seating position, not to preclude her from doing any additional work," and offered to talk with her supervisors about his recommendation. Dr. Threlfall "chose to ignore Dr. Mueller's offer" to discuss Dr. Soysal's limitations.

Dr. Threlfall was not the only defendant who allegedly ignored Dr. Soysal's doctor's recommendation. Dr. Soysal says that her physician wrote a letter to the County on August 19, 2022, calling for Dr. Soysal to be limited to four hours per day of patient time with "no limitations to any other work related activities including charting, phone calls, emails or any other activity that does not occur while the provider is on camera." On October 7, 2022, Dr. Soysal made another request to the County. Defendants allegedly ignored both requests.

Given these allegations, Dr. Soysal has alleged enough facts to make plausible the inference that defendants did not engage in the "interactive process" required by federal disability law. *Snapp*, 899 F.3d 1095. Defendants' motion to strike her ADA failure-to-accommodate claim is therefore denied.

**VI.    Motion to Strike**

Defendants also move to strike Dr. Soysal's request for attorneys' fees and costs. Motion to Dismiss at 8. A pro se litigant generally may not receive an award of attorneys' fees. *See Kay v. Ehrler*, 499 U.S. 432, 437–38 (1991). But such a litigant may be entitled to receive such an award if she retains attorneys at some point during the litigation. *See id.* And whether or not she retains an attorney, Dr. Soysal may incur recoverable costs in the future. Defendants' motion to strike Dr. Soysal's request for attorneys' fees and costs is therefore denied without prejudice to any arguments defendants might assert in response to any future motion seeking such an award.

**CONCLUSION**

For the reasons stated above, the Court grants defendants' motion to dismiss Dr. Soysal's retaliation claim with leave to amend and denies the motion to dismiss all other claims. The Court dismisses the claims against the County Personnel Department and Ajita Patel (sued in her official capacity), because those claims are redundant of her claims against the County. The Court denies defendants' motion to strike. Dr. Soysal may file any amended complaint within 56 days of this Order.

**IT IS SO ORDERED.**

Dated: February 11, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

11